**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |  |
|---|---|---|
| **KIMBERLY A. STAHLMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 3:10CV475** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. ҫ 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Kimberly A. Stahlman, seeks judicial review pursuant to 42 U.S.C. ҫ 405(g) of the final decision of Defendant Commissioner denying her application for Social Security Disability ("DIB") payments. The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 6) be GRANTED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

judgment (docket no. 8) be DENIED; and that the final decision of the Commissioner be REVERSED and REMANDED for further administrative proceedings in accordance with this report and recommendation.

## I.     PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on August 30, 2007, claiming disability due to fibromyalgia, headaches, depression, acid reflux disorder, and restless leg syndrome, with an alleged onset date of April 11, 2006. (R. at 115-17, 135, 138.)  The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2]  (R. at 66-71; 79-82.)  On May 22, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 18-45.)  On August 13, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where Plaintiff retained the residual functional capacity to perform her past relevant work as a seamstress.  (R. at 11-17.)  The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.  (R. at 1-5.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA.  20 C.F.R. Part 404, Subpart Q; see also § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process

that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition.  Id.  If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c).  In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function.  20 C.F.R. § 404.1520(c).  At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. ç 404.1572(a).  Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized."  20 C.F.R. ç 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

testimony of the VE be "relevant or helpful."  Id.  If the ALJ finds that the claimant is not capable

of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits.  20

C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset

of her disability.  (R. at 13.)  At steps two and three, the ALJ found that Plaintiff had the severe

impairments of fibromyalgia and headaches, but that these impairments did not meet or equal

any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at

that stage.  (R. at 13-15.)  The ALJ next determined that Plaintiff had the RFC to perform the full

range of light work.  (R. at 15-16.)

The ALJ then determined at step four of the analysis that Plaintiff could perform her past

relevant work as a seamstress, because such work did not require activities precluded by

Plaintiff's RFC.  (R. at 16-17.)  Because the ALJ determined that Plaintiff was capable of

performing her past relevant work, it was unnecessary to pursue the analysis to step five in which

the Commissioner would have had the burden to show that, considering the claimant's age,

education, work experience, and RFC, the claimant was capable of performing other work that is

available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(f); 404.1520(f);

Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146

n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  Accordingly, the ALJ concluded

that Plaintiff was not disabled and was employable such that she was not entitled to benefits.  (R.

at 17.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the

alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) the ALJ improperly discounted the opinions of Plaintiff's treating physicians; and (2) the ALJ improperly assessed Plaintiff's credibility. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 10-18.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 14-25.)

> **A.** **The ALJ failed to properly weigh the opinions of Plaintiff's treating physicians.**

Plaintiff contends that the ALJ failed to follow the so-called "treating physician rule" with respect to the opinions of two of her treating physicians and the consulting state agency physicians. (Pl.'s Mem. at 10-15.) Plaintiff argues that the opinion of Dr. Lomeo, her treating rheumatologist, should have been assigned controlling weight, and that the ALJ did not make it clear what weight, if any, was assigned to the opinion. Plaintiff also argues that the only evidence contrary to Dr. Lomeo's opinion is the opinion of the non-examining state agency physician, Dr. William Amos, and such does not constitute substantial evidence to override Dr. Lomeo's opinion. Finally, Plaintiff asserts that the ALJ disregarded the opinion of her treating neurologist, Dr. Cohen, and that the ALJ also failed to indicate what weight was assigned to his opinion, as required.

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence

resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

In his brief discussion of Plaintiff's treating physician opinions, the ALJ noted that he "credit[ed]" Dr. Lomeo's opinion regarding Plaintiff's limited ability, but that he found "little supportive or longitudinal evidence regarding treatment or reasons for the limitations expressed." (R. at 16.) Though the ALJ briefly mentioned that Dr. Cohen treated Plaintiff for her headache impairment, of which she had a long history, the ALJ failed to mention the opinion submitted by Dr. Cohen. (R. at 16, 445.) The ALJ only noted that prescribed medication was reasonably

effective in controlling Plaintiff's headaches, and that Dr. Cohen noted that Plaintiff's fibromyalgia was a more significant problem than her headaches. (R. at 16, 272, 358.)

The ALJ also stated that though it was clear that Plaintiff suffered from fibromyalgia and pain, there was "just no longitudinal evidence regarding the functional limitations from her impairment." (R. at 16.) The ALJ noted Plaintiff's medication use and that such caused drowsiness, and he also noted that she had tender points, but stated that otherwise the results of her examinations were substantially normal and the medications were somewhat effective in controlling her symptoms. (R. at 16.) With regards to Dr. Amos's opinion, the ALJ simply stated that although the opinion was not based on new evidence received in the course of developing Plaintiff's claim, the opinion was nevertheless consistent and the ALJ accordingly assigned significant weight to it. (R. at 16, 308-14.) Such was the extent of the analysis of Dr. Amos's opinions by the ALJ.

This Court cannot recommend that such a wanting analysis be affirmed. While the ALJ implies in his decision that the record contains little to no evidence regarding treatment for Plaintiff's impairments, the opposite is appears to be the case. Indeed, the record contains confirmation of no less than thirty-four visits by Plaintiff to three different physicians during the relevant period.[6] Moreover, the record further demonstrates that Plaintiff regularly visited her primary care physician, Dr. Clemo; her rheumatologist, Dr. Lomeo; and her neurologist, Dr. Cohen. Though such circumstances are not alone determinative of disability, such evidence should have been considered by the ALJ.

In further support of this Court's recommendation, the record contains a note from Dr.

---

[6] The relevant period is April 11, 2006 (Plaintiff's alleged onset date), through December 31, 2008 (Plaintiff's date last insured). (R. at 135.)

Lomeo, dated July 2, 2007, which states that Plaintiff suffered from fibromyalgia and, as a result, she could not sit, stand, or lift her arms for long periods of time. (R. at 219, 301.) Dr. Lomeo also completed a fibromyalgia questionnaire for Plaintiff on October 19, 2007.[7] (R. at 286-91.) Dr. Lomeo noted that she had treated Plaintiff approximately every three months since May 22, 2006; that Plaintiff satisfied the American Rheumatological criteria for fibromyalgia; that Plaintiff also suffered from restless leg syndrome, migraine headaches, and GERD[8]; and that Plaintiff's prognosis was poor. (R. at 286-91.) Dr. Lomeo further identified eighteen positive muscle tender points and noted that Plaintiff suffered diffuse muscle and joint pains; headaches; constant severe pain in her lumbosacral spine, cervical spine, thoracic spine, chest, shoulders, arms, hands/fingers, hips, legs, knees/ankles/feet; that her impairments would last more than twelve months; and that she was not a malingerer. (R. at 286-91.) Dr. Lomeo also indicated certain functional limitations resulting from the Plaintiff's impairments, specifically that Plaintiff could sit up to one hour, but not continuously; stand/walk zero up to one hour, but not continuously; must move around every fifteen to twenty minutes; could occasionally lift/carry up to five pounds; could not push or pull; could not kneel, bend, or stoop; must avoid wetness and temperature extremes, noise, humidity, fumes, dust, gases, and heights; was incapable of even low stress jobs because stress exacerbated the symptoms of fibromyalgia; needed breaks every fifteen to twenty minutes; was prone to "good days" and "bad days"; would be absent from work more than three times a month; and that such limitations had persisted since May 2006. (R. at

---

[7] Though there is also a letter from Dr. Lomeo in the record, such was submitted after the ALJ's decision. (R. at 446.) However, the Court notes that the letter essentially repeats what is indicated in the October 19, 2007 questionnaire that was part of the record before the ALJ.

[8] Gastroesophageal reflux disease. Dorland's Illustrated Medical Dictionary 783 (31st ed. 2007). A condition in which stomach contents flow backwards into the esophagus. Dorland's at 775, 1640.

286-91.)

Though the ALJ stated that there was little supportive longitudinal evidence regarding treatment or reasons for the limitations Dr. Lomeo expressed, there are records from at least twelve different visits to Dr. Lomeo supporting her findings. (R. at 292-95, 302-06, 422-29.) For example, on May 22, 2006, notes indicate that Plaintiff had diffuse muscle tenderness, though she was not on any medication at the time. (R. at 302-03.) On June 9, 2006, notes indicate that the medication Lexapro did not assist Plaintiff, and that Lyrica helped but that it was too expensive and not "covered" by Plaintiff's insurance. (R. at 304.) On November 21, 2006, notes indicate that Plaintiff's elbow was worse, that an injection did not alleviate the pain, and that the medication Neurontin "really" helped her restless leg syndrome. (R. at 306.) On January 5, 2007, Plaintiff complained of painful arms and stated that her fibromylagia was getting worse. (R. at 305.) On March 23, 2007, notes indicate that Plaintiff was "following up" from her recent unspecified surgery. (R. at 294, 429.) On June 29, 2007, notes indicate that Plaintiff reported more restless leg syndrome symptoms, menopause, and more diffuse myalgias; but that the medication Neurontin helped. (R. at 293, 428.) On September 19, 2007, notes indicate that Requip was not helping Plaintiff's leg pains, but otherwise she was tolerating her medications. (R. at 292, 427.) On October 18, 2007, treatment notes indicate that Lyrica was helping, that Norco helped Plaintiff's leg pain, but that Plaintiff still experienced leg pain and restless leg symptoms; that she suffered from constant pain and fatigue; that she could not accomplish much during the day; and that her feet were very painful after she stood to wash dishes. (R. at 295, 426.) On December 12, 2007, notes indicate that Plaintiff stopped taking Requip because she felt it did not help; that she was still experiencing diffuse myalgias; and that

11

she wanted to try Wellbutrin instead of Effexor. (R. at 425.) On February 22, 2008, Plaintiff again reported diffuse myalgias and more fatigue. (R. at 424.) On April 14, 2008, Plaintiff reported having a headache for the prior three days; that she was tolerating Lyrica and Metanx well; but that Wellbutrin was not working and she wished to return to the Effexor. (R. at 423.) On August 18, 2008 (the final treatment notes in the record from Dr. Lomeo), Plaintiff was reported to be stable on her medication, though she still experienced diffuse myalgias, arthralgia, and severe fatigue, and that it was hard for her to engage in any activities of daily living. (R. at 422.)

The Court fails to see how the above provides "little supportive or longitudinal evidence" regarding Plaintiff's treatment and the reasons for the limitations expressed by Dr. Lomeo. (R. at 16.) Indeed, the subject treatment notes indicate that Plaintiff's medication dosage continued to require adjustments, as well as Plaintiff's complaints of worsening symptoms and continued pain while on the medication regimen. While a claimant certainly need not be pain-free in order to be found not disabled, it does not appear that the ALJ considered any pain Plaintiff continued to experience despite the medication regimen employed. See Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1990). Further, it appears that the ALJ disregarded Dr. Lomeo's consistent treatment of Plaintiff over an approximately two and a half year period. As previously noted, during such time Plaintiff visited Dr. Lomeo on at least twelve separate instances.

A number of courts have encountered the difficulties involving the disease of fibromyalgia and its subjective nature. Fibromyalgia, a rheumatic disease with symptoms including significant pain and fatigue, tenderness, stiffness of joints, and disturbed sleep, is diagnosed based on tenderness of at least eleven of eighteen standard "trigger points" on the

body.  Stup v. Unum Life Ins. Co. of Am., 390 F.3d 301, 303 (4th Cir. 2004) (citing Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)).  Quoting the Seventh Circuit's decision in Sarchet, the Fourth Circuit, as the controlling appellate authority for this Court, noted that "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not."  Stup, 390 F.3d at 303.  In Sarchet, the Seventh Circuit also noted the difficulties courts face with respect to addressing the issue of fibromyalgia, stating that its symptoms are entirely subjective and there are no laboratory tests that can confirm the presence or severity of the syndrome.  78 F.3d at 306.  The Second Circuit has also noted the difficulty in determining disability due to fibromyalgia, as such a disease "eludes" objective measurement.  Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003).  Furthermore, the Sixth Circuit has noted that objective tests are of little relevance in determining the existence or severity of fibromyalgia, and that fibromyalgia patients "manifest normal muscle strength and neurological reactions and have a full range of motion."[9]  Preston v. Sec'y of Health & Human Servs., 854 F.2d 815, 820 (6th Cir. 1988).  The Sixth Circuit also noted the significance of a plaintiff's treatment with a rheumatologist, who is a specialist in conditions such as fibromyalgia.  Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 245 (6th Cir. 2007).  In that case, the Court noted that the ALJ's reliance on the testimony and statements of two physicians who were not rheumatologists, nor the plaintiff's treating physicians, was a "fact of special significance given the unique nature of fibromyalgia."  Id.  Given the disease's elusive and subjective symptoms, the Court found that

_____

[9] Defendant noted that Dr. Amos, one of the state agency physicians, found it significant that Plaintiff's "neurologic exams revealed no focal neurologic deficits and full ROM [range of motion] of her extremities."  (Def.'s Mem. at 18-19.)  Defendant also asserted, as support for Dr. Amos's opinion, that the record consistently revealed that Plaintiff had no weakness and 5/5 muscle strength.  (Def.'s Mem. at 19.)  As the Sixth Circuit explained, these findings are not uncommon in fibromyalgia patients; nor are they inconsistent with a diagnosis of fibromyalgia.

the plaintiff's documentation of consistent treatment for symptoms such as pain and stiffness supported her treating physicians' opinions. Id. at 244.

In this case, the ALJ also erroneously relied on a lack of objective medical evidence when he refused to assign significant or controlling weight to Dr. Lomeo's opinion. While the ALJ noted that Plaintiff had "tender points," he did not note that she had all eighteen tender points that serve as the basis for a diagnosis of fibromyalgia. (R. at 286-91.) Further, the record is replete with Plaintiff's complaints of continued pain and fatigue, both in her written statements and testimony as well as treatment records. Also, Plaintiff was treated by a rheumatologist, who specializes in diseases such as fibromyalgia. Nevertheless, these factors were not adequately considered by the ALJ. It is clear that Plaintiff suffers from fibromyalgia. However, at the same time, it is not clear how severe her condition is, because as noted, most individuals do not have such a severe case as to be totally incapable of gainful activity. Stup, 390 F.3d at 303; Sarchet, 78 F.3d at 307.

It is not possible to discern what the ALJ meant by "credit[ing]" Dr. Lomeo's opinion while completely discounting the specific limitations she expressed. (R. at 16.) It instead appears that the ALJ simply afforded Dr. Lomeo's opinion no weight, and his decision to do so is not supported by substantial evidence. The ALJ's claims that Plaintiff's examinations were "substantially normal" and that her medications caused drowsiness but were "somewhat effective in controlling her symptoms" amounts to nothing more than a mere "picking and choosing" of the evidence that supports his conclusion while he ignored the evidence detracting from it. (R. at 16; Harris v. Comm'r of Soc. Sec., No. 2:04cv513, 2005 WL 1162530 at *8 (E.D. Va. May 12, 2005) (quoting Loza v. Apfel, 219 F.3d 378, 393 (5th Cir. 2000)); see also Switzer v. Heckler,

14

742 F.2d 382, 385 (7th Cir. 1984).)  Consequently, this Court cannot recommend that the ALJ's decision in this regard is supported by substantial evidence, as required.

Similarly, the Court cannot recommend that the ALJ's treatment of Dr. Cohen's opinion is supported by substantial evidence.  In fact, the Court is compelled to note that the ALJ summarily disregarded Dr. Cohen's opinion, and did not even indicate that Dr. Cohen submitted an opinion at all.  (R. at 16.)  The ALJ stated that Plaintiff was followed by Dr. Cohen since at least May 2006 for her headache impairment.  (R. at 16.)  The ALJ also noted that treatment records indicated that Plaintiff was "doing well" on a medication that was reasonably effective in controlling her headaches, and that Dr. Cohen stated that Plaintiff's fibromyalgia was a more significant problem than her headaches.  (R. at 16.)

Dr. Cohen, in his May 22, 2009 letter, stated that Plaintiff had seen him five to six times a year for treatment since August 29, 2006; that her headaches could be controlled with intensive treatment, but that "recovery" with no headaches without medications was not to be expected; that her medications helped, but they did not relieve her pain; that Plaintiff was not a malingerer and her headaches would last at least twelve months; that she had multiple stressors which contributed to the severity of her symptoms and functional limitations; and that because of her headaches, she may be absent from work as often as every month.  (R. at 445.)  Dr. Cohen also noted that though Plaintiff's condition had improved, his observations from a questionnaire he completed on October 1, 2007 remained accurate.  (R. at 445.)  However, it does not appear that such questionnaire was ever submitted to the ALJ or this Court, as it does not appear in the record.

Again, it does not appear that the ALJ properly weighed Dr. Cohen's statements.  In

15

addition to the treatment records from no less than thirteen visits to Dr. Cohen during the relevant time period, Dr. Cohen also submitted the 2009 letter regarding Plaintiff's impairments before the ALJ rendered his decision.  (R. at 224, 230-31, 233, 247-48, 253, 255, 257-59, 272-84, 354-65, 368, 371-72, 376-77, 380-82, 432-35, 445.)  While it appears that Dr. Cohen's letter in and of itself may not necessarily give rise to a finding of disability, the Court cannot at the same time determine whether the ALJ considered the opinion at all.  Accordingly, it was error for the ALJ not to at least indicate what weight he assigned the opinion.

As to Defendant's argument that Plaintiff had been employed successfully in the past while suffering from her impairments (Def.'s Mem. at 18), the Court is not persuaded that such supplies substantial evidence to justify the ALJ's decision.  In fact, even accepting the argument as true, the Court notes the possibility that impairments can increase in severity over time.  It is unclear whether Plaintiff suffered a "significant deterioration" in her condition since December 2003, which is the last month that Plaintiff was employed, because the record only consists of medical evidence dating back to 2005.  (R. at 140; see Craig v. Chater, 76 F.3d 585, 596 n.7 (4th Cir. 1996).)  It is, however, accurate to say that Plaintiff has suffered her headache impairment since she was a teenager, as she has stated as much and her evidence is not contradicted in the record.  (R. at 26.)  However, as the ALJ noted, treating neurologist Dr. Cohen stated that Plaintiff's fibromyalgia was a more significant problem than her headaches, and it does not appear that she was diagnosed with the condition until 2000 or 2001.  (R. at 16, 257, 272, 358.)  In any event, the ALJ made no mention of Plaintiff having worked with her impairments in the past, and instead relied exclusively on the so-called lack of longitudinal evidence in the record.

While an ALJ is not required to provide a detailed discussion of the opinions of treating

physicians in which there is a full discussion of each factor that is required to be considered when weighing such opinions, a reviewing court must be able to determine what the basis is for the ultimate decision. See Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 762 n.10 (4th Cir. 1999). Here, this Court cannot determine if the ALJ applied the correct legal standard in weighing the opinions of Drs. Lomeo and Cohen, as his brief dialog regarding such does not provide clarity.

With respect to Plaintiff's contentions regarding the opinion of state agency consultant Dr. Amos, the Court agrees that the opinion does not constitute substantial evidence to support the ALJ's RFC determination. As the ALJ noted, the opinion was based on information contained in the record at the time of the reconsideration determination, and medical records generated or provided after that date were not considered by Dr. Amos. (R. at 16.) While the ALJ succinctly stated that Dr. Amos's opinion was consistent with the new evidence received, this Court cannot recommend that such a finding be upheld. Dr. Amos rendered his opinion on November 27, 2007. (R. at 308-14.) As noted above, there are several treatment records from multiple physicians received after such date, including Dr. Cohen's May 2009 report. There are also eight recorded visits to Plaintiff's treating physician, Dr. Clemo, which do not appear to have been addressed by Dr. Amos. (R. at 221-22, 225-28, 241-43, 260-69, 369-70, 373-75, 383-85, 393-420.)

In his opinion, Dr. Amos indicated that Plaintiff's daily activities were "significantly limited," that her treatment was essentially routine and conservative in nature, and that her prescribed medications had been "relatively effective" in controlling her symptoms. (R. at 313.) However, as noted earlier, Plaintiff continued to seek adjustments to her medication regime,

17

including both increased dosages and different medications altogether. Also, Dr. Amos did not have the documentation demonstrating that Plaintiff treated with three different physicians, two of whom were specialists, over thirty times in a two and a half year period. Both specialists also indicated that Plaintiff was not a malingerer. (R. at 286-91, 445.) Such a quantity of treatment tends to demonstrate that Plaintiff's treatment was not as "routine" and "conservative" as the ALJ's decision implies, and as noted earlier, fibromyalgia is a condition which eludes objective measurement and is difficult to assess.

While quantity of treatment is only one factor to be considered in weighing treating physicians' opinions, and such is not a deciding element in terms of finding disability, it should have at least been considered by the ALJ in addition to the fact that both opinions were issued by specialists who had at least a two and a half year treating relationship with Plaintiff. Dr. Amos issued his opinion never having seen Plaintiff, and indeed never having seen multiple treatment records or the opinions issued by the treating physicians. Dr. Martin Cader, who affirmed Dr. Amos's opinion, also did not have access to Dr. Cohen's opinion. (R. at 430.) Dr. Amos also indicated that there was no treating physician opinion in the file in November 2007, but the record indicates that Dr. Lomeo completed a fibromyalgia questionnaire in October 2007, which included a discussion of the functional limitations Plaintiff suffered as a result of her impairment. (R. at 286-91, 312.) It is unclear whether the questionnaire was considered by Dr. Amos, as no mention was made of it in his analysis. Dr. Amos instead mentioned a conclusory remark attributed to Dr. Lomeo regarding Plaintiff's inability to work, correctly noting that such an opinion was reserved to the Commissioner. (R. at 313.)

If, in fact, Dr. Lomeo's opinion was not part of the record considered by Dr. Amos, then

the ALJ's statement that the evidence received after the issuance of Dr. Amos's opinion as being consistent is inaccurate. Clearly, Dr. Lomeo and Dr. Amos express inherently different opinions regarding Plaintiff's capabilities. If, on the other hand, Dr. Amos simply overlooked Dr. Lomeo's opinion, it is unclear whether he would have issued a different opinion had he considered Dr. Lomeo's conclusions. In any event, it simply would not be appropriate to disregard the opinions of two treating physicians, as the ALJ has done, or to uphold a finding that Drs. Amos's and Cader's opinions are consistent with the medical findings of record.

Accordingly, the Court recommends that the case be remanded to the ALJ for proper consideration of both treating physicians' opinions. While the Court agrees with Plaintiff that the ALJ's decision is not supported by substantial evidence, it cannot recommend that Plaintiff is entitled to an outright award of benefits. Instead, it is proper for the ALJ to weigh the opinions of the physicians, taking into account all of Plaintiff's impairments as they affect her in conjunction, and re-issue a proper RFC analysis. With respect to Plaintiff's fibromyalgia, the Court notes that it would be erroneous for the ALJ to reject any opinions due simply to a lack of objective evidence, as the condition is not one which can be measured objectively.

**B.    The ALJ failed to properly assess Plaintiff's credibility.**

Plaintiff also contends that the ALJ did not provide any reasons for finding her not to have been credible, and that he instead relied on standard language in making his assessment. (Pl.'s Mem. at 15-18.) Though the Court recommends that the case should be remanded for a proper evaluation of Plaintiff's treating physicians' opinions, the Court also recommends that the ALJ's credibility analysis is flawed and serves as a second basis for remand.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant

19

can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air

Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)).  Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled.  See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).  The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

Here, the ALJ found that while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of such symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment.  (R. at 16.)  The Court notes that the ALJ did in fact provide a reason for his finding:  "Although it is clear that [Plaintiff] has fibromyalgia and suffers from pain, there is just no longitudinal evidence regarding the functional limitations from her impairment."  (R. at 16.)  However, as discussed earlier, the record contains a plethora of medical evidence regarding Plaintiff's impairments, and the Court cannot accept the ALJ's reasoning for finding Plaintiff not credible.

Plaintiff testified on May 22, 2009 that she drove once or twice a week to the store, doctors, or to church; she had chronic daily pain in her legs; she took prescription medication everyday which "[took] the edge off"; on average, her daily pain was a six to seven on a zero to

ten scale, and her headache pain was a seven to eight; she could only lift five pounds, stand five to ten minutes, sit fifteen minutes, and walk for a half-hour; she needed medication to help her sleep, and only slept about four hours at a time; she napped for fifteen minutes to an hour, though not every day; her medication made her "really tired and sleepy"; her daughter helped with cooking and cleaning; her hands cramped when writing, and her fingers and feet went numb a couple times a day for about five minutes; the pain in her legs prevented her from standing, walking, or sitting too long; her arms were weak when above her shoulders; she only did light cooking; she could not clean the stairs or scrub her bathtub, but could do other chores "a little bit at a time"; and she had trouble getting up off the floor. (R. at 24-41.) Plaintiff also submitted function reports and fatigue and pain questionnaires preceding her testimony, which appear to contain substantially similar allegations. (R. at 160-67, 169-70, 178-80, 182-89, 195.)

The Court is not persuaded by Defendant's contention that "brevity can foster clarity" with regards to the ALJ's reasoning in this instance. (Def.'s Mem. at 24-25; see Lane Hollow Coal Co. v. Director, OWCP, 137 F.3d. 799, 803 (4th Cir. 1998).) Nor is the Court persuaded that remand for a more careful consideration of the relevant factors would be inappropriate. (Def.'s Mem. at 25; see Trawick v. Drug Enforcement Admin., 861 F.2d 72, 76 (4th Cir. 1988).) Though Defendant asserts that the ALJ considered all the relevant factors in his credibility assessment, the Court is unable to reach the same conclusion. The ALJ's analysis is simply *too* brief to provide necessary clarity, especially given that treatment records appear to support Plaintiff's allegations.

Accordingly, it is the Court's recommendation that Plaintiff's claim be remanded to the ALJ for the additional reason of completing a more thorough credibility assessment. While the

Court finds that the credibility analysis is not supported by substantial evidence, it cannot substitute its own judgment and assess Plaintiff's credibility at this juncture. Consequently, the case should be remanded.

## V. CONCLUSION

Although the Court concludes that the record does not provide substantial evidence to sustain the ALJ's conclusion that Plaintiff is not disabled, the Court is unable at the same time to recommend an outright award of benefits. The Court cannot make a finding on Plaintiff's credibility, as that is more properly assessed initially on the administrative level. The Court is mindful of the prolonged period of time that the matter has been pending and, therefore, if remanded, it is recommended that the ALJ expedite the process by reconsidering Plaintiff's application in light of this report; and that a final administrative decision be issued in which all findings are sufficiently articulated and substantiated, including any credibility determinations, as would be sufficient for possible judicial review.

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 6) be GRANTED; that Defendant's motion for summary judgment (docket no. 8) be DENIED; and, that the final decision of the Commissioner be REVERSED and REMANDED for further administrative proceedings consistent with this report and recommendation.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and**

**recommendations of the Magistrate Judge contained in the foregoing report within**

**fourteen (14) days after being served with a copy of this report may result in the waiver of**

**any right to a <u>de novo</u> review of the determinations contained in the report and such failure**

**shall bar you from attacking on appeal the findings and conclusions accepted and adopted**

**by the District Judge except upon grounds of plain error.**

_____/s/_____
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date:  May 17, 2011
Richmond, Virginia